Robert C. Faber (RF 7020)
Peter S. Sloane (PS 7204)
Art C. Cody (AC 5515)
OSTROLENK, FABER, GERB & SOFFEN, LLP
1180 Avenue of the Americas
New York, New York  10036

Attorneys for Plaintiff
Nevada Apparel Corp.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEVADA APPAREL CORP.,<br><br>               Plaintiff,<br><br>     v.<br><br>ARCADIA GROUP BRANDS LIMITED,<br><br>               Defendant. | Civil Action No.: 1:06-cv-03986-DLC |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF
## MOTION FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

A. INTRODUCTION...............................................................................1

B. STATEMENT OF FACTS.................................................................2

 I. Plaintiff's Commercial Activities...............................................2

 II. Plaintiff's Entry into the Large Department Store Market.............................3

 III. Plaintiff's Trademark Application and the Opposition....................................4

 IV. Defendant's Activities......................................................................5

 V. The Harm Caused to Plaintiff by Defendant's Activities.................................7

C. ARGUMENT.................................................................................8

 I. Plaintiff Will Suffer Irreparable Harm Absent an Injunction............................9

 II. Plaintiff is Likely to Succeed on the Merits..............................................9

  A. Plaintiff Owns the trademark TOPSHOP for Clothing.........................9

   1. Under Common Law, The Prior User of the Mark is the Owner.......................................................................9

   2. Priority of Trademark Rights in the United States Depends upon Priority of Use in the United States..............................10

  B. Defendant's Conduct Is Likely To Cause Consumer Confusion.............12

   (i) Plaintiff's Mark TOPSHOP is Inherently Distinctive and Strong.................................................13

   (ii) The Marks Are Identical.........................................15

   (iii) The Product Proximity And Channels Of Trade Are The Same.............................15

   (iv) Actual Confusion.................................................16

   (v) Defendants Have Acted With Bad Intent......................17

   (vi) The Sophistication of Buyers is Low...........................17

   (vii) Quality of the Products.........................................18

{00774234.1}

III.   The Balance of Harms Favors Nevada Apparel.................................................21

    A.   Arcadia's Intended Infringement Has Damaged
and Will Continue to Damage Nevada Apparel
and its Investment in the TOPSHOP Trademark
Unless Enjoined.................................................................21

    B.   Granting the Preliminary Injunction will be Less
Damaging to Arcadia Than Denying the Preliminary
Injunction would be to Nevada Apparel.....................................23

    C.   Granting the Preliminary Injunction is Necessary to
Safeguard the Public from a Likelihood of Confusion.....................24

IV.   Plaintiff Is Entitled To A Temporary Restraining Order............................25

D.   CONCLUSION...............................................................................25

## TABLE OF AUTHORITIES

<u>CASES</u>

*Abercrombie & Fitch Co. v. Hunting World, Inc.,*
    537 F.2d 4 (2d Cir. 1976)…………………………………………………………….....14

*Almacenes Exito S.A. v. El Gallo Meat Market, Inc.,*
    381 F.Supp.2d 324 (S.D.N.Y. 2005)………………………………………………….12

*American Home Prods. Corp. v. Johnson Chem. Co., Inc.,*
    589 F.2d 103 (2d Cir. 1979)………………………………………………………….....17

*Ameritech, Inc. v. American Information Technologies Corp.,*
    811 F.2d 960 (6th Cir. 1987)………………………………………………………….20

*A.T. Cross Co. v. Jonathan Bradley Pens, Inc.,*
    470 F.2d 689 (2d Cir. 1972)………………………………………………………....17

*Banff, Ltd. v. Federated Dept. Stores, Inc.,*
    638 F. Supp. 652, 657 (S.D.N.Y 1986),
    *aff'd.,* 841 F.2d 486 (2d Cir. 1988)………………………………………….19, 23, 24

*Banff, Ltd. v. Federated Dept. Stores, Inc.,*
    841 F.2d 486 (2d Cir. 1988)………………………………………….....18, 19, 20, 21

*Buti v. Impressa Perosa S.R.L.,*
    139 F.3d 98 (2d Cir. 1985)…………………………………………...……………...11

*Citizens Financial Group Inc. v. Citizens National Bank of Evans City,*
    383 F.3d 110 (3d Cir. 2004)………………………………………….…………..…20

*Clinique Laboratories, Inc. v. DEP Corp.,*
    945 F. Supp. 547 (S.D.N.Y. 1996)…………………………………………………..9

*Coca-Cola Co. v. Gemini Rising, Inc.,*
    346 F. Supp. 1183 (E.D.N.Y. 1972)……………..…………………...………….…18

*Cooper Indus. v. Repcoparts USA,*
    218 U.S.P.Q. 81 (T.T.A.B. 1983)…………..………………………………………15

*Corning Glass Works v. Jeannette Glass Co.,*
    308 F. Supp. 1321 (S.D.N.Y. 1970),
    *aff'd.,* 43 F.2d 784 (2d Cir. 1970)…………………………………...…………24

*Cullman Ventures, Inc. v. Columbian ArtWork, Inc.,*
    717 F. Supp. 96 (S.D.N.Y. 1989)……………………………………….…….…14

*Davidoff & Cie, S.A. v. PLD Intern. Corp.,*
    263 F.3d 1297 (11th Cir. 2001)…………...………………………………….…24

*Edison Bros. Stores v. Cosmair,*
    651 F. Supp. 1547 (S.D.N.Y. 1987)…………….…..………………………….14

*Fisons Horticulture v. Vigoro Indust.,*
    30 F.3d 466 (3d Cir. 1994)……………………………………………..…….20

*Florence Mfa. Co. v. J.C. Dowd & Co.,*
    178 F. 73 (2d Cir. 1910)………………………………………………….…….18

 Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.,
    670 F.2d 642 (6th Cir. 1982)…………………………………………….23

*Genesee Brewing Co. v. Stroh Brewing Co.,*
    124 F.3d 137 (2d. Cir. 1997)……………………………………..……..8, 9

*Girls Clubs of Am., Inc. v. Boys Clubs of Am., Inc.,*
    683 F. Supp. 50 (S.D.N.Y.),
    aff'd, 859 F.2d 148 (2d Cir. 1988)……………………………………….…….16

*Gruhner and Jahr U.S.A. Pub. v. Meredith Corp.,*
    991 F.2d 1072 (2d. Cir. 1993)………………………………………..…….9

*Hanover Star Milling Co. v. Metcalf,*
    240 U.S. 204, 60 L.Ed. 713, 36 S.Ct. 357 (1916)……………………………..……9, 10

*Hasbro Inc. v. Lanard Toys Ltd.,*
    858 F.2d 70 (2d. Cir. 1988)…………….…..………………………………….9

*Home Box Office, Inc. v. Showtime/The Movie Channel, Inc.,*
    832 F.2d 1311 (2d Cir. 1987)………………..………………………….…...…..9

*In re Hyper Shoppes,*
    837 F.2d 463 (Fed. Cir. 1988)…………………………………………….......15

*Lambda Electronics v. Lambda Tech. Inc.,*
    515 F.Supp. 915 (S.D.N.Y. 1981)…………………………………………….17

*La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.,*
    495 F.2d 1265 (2d Cir. 1974)……………………………………………….......10

*McGregor-Doniger Inc. v. Drizzle Inc.*,
    599 F.2d 1126 (2d Cir. 1979)...................................................14, 15, 18

*Mobil Oil Corp. v. Pegasus Petroleum Corp.*,
    818 F.2d 254 (2d Cir. 1987)...........................................................19

*Montblanc-Simplo GMBH V. Staples Inc.*,
    172 F. Supp. 231 (D. Mass. 2001)...............................................23

*Nautilus Group Inc. v. ICON Health and Fitness Inc.*,
    372 F.3d 1330 (Fed. Cir. 2004)....................................................15

*Olay Co., Inc. v. Cococare Products, Inc.*,
    218 U.S.P.Q. 1028 (S.D.N.Y. 1983)............................................16

*Opticians Ass'n. of America v. Independent Opticians of America*,
    920 F.2d 187 (3rd Cir. 1990)........................................................24

*Paccar, Inc. v. Telescan Technologies, L.L.C.*,
    115 F. Supp. 2d 772 (E. D. Mich. 2000)......................................24

*Paddington Corp. v. Attiki Importers & Distributors, Inc.*,
    996 F.2d 577 (2d Cir. 1993).........................................................14

*Person's Co. Ltd. v. Christman*,
    900 F.2d 1565 (Fed. Cir. 1990)....................................................11

*Polaroid Corp. v. Polarad Electonics Corp.*,
    287 F.2d 492 (2d Cir. 1961*),*
    *cert. denied,* 368 U.S. 820 (1961).............................................13

*Proctor & Gamble Co. v. Johnson & Johnson, Inc.*,
    485 F. Supp. 1185 (S.D.N.Y. 1979)
    aff'd., 636 F.2d 1203 (2d Cir. 1980)............................................19

*Pullman Co. v. Bullard*,
    44 F.2d 347 (5th Cir. 1930).........................................................13

*RJR Foods, Inc. v. White Rock Corp.*,
    201 U.S.P.Q. 578 (S.D.N.Y. 1978),
    aff'd, 603 F.2d 1058 (2d Cir. 1979).........................................16, 17

*Scarves by Vera, Inc. v. Todo Imports, Ltd.*,
    544 F.2d 1167 (2d Cir. 1976)......................................................16

*Societe Des Produits Nestle S.A. v. Casa Helvetia, Inc.,*
 982 F.2d 633 (1st Cir. 1992)............................................................9

*Sterling Drug, Inc. v. Bayer AG,*
 14 F.3d 733 (2d Cir. 1994)............................................................20

*Stix Products, Inc. v. United Merchants & Mfrs. Inc.,*
 295 F. Supp. 479 (S.D.N.Y. 1968)................................................14

*Syntex Laboratories, Inc. v. Norwich Pharmacal Co.,*
 315 F. Supp. 45 (S.D.N.Y. 1970),
 *aff'd.,* 437 F.2d 566 (2d Cir. 1971)..............................................23

*Thompson Medical Co., Inc. v. Pfizer, Inc.,*
 753 F.2d 208 (2d Cir. 1985)........................................................9, 10

*Trade-Mark Cases,*
 100 U.S. 82, 25 L.Ed. 500 (1879)................................................10

*Union Carbide Corp. v. Ever-Ready Inc.,*
 531 F.2d 366 (7th Cir.),
 cert. denied, 429 U.S. 830 (1976)................................................17

*United Drug Co. v. Theodore Rectanus Co.,*
 248 U.S. 90, 63 L.Ed. 141, 39 S.Ct. 48 (1918).........................10, 11

*In re Vuitton et Fils, S.A.,*
 606 F.2d 1 (2d Cir. 1979)..............................................................25

*Warner-Lambert Co. v. Northside Dev. Corp.,*
 86 F.3d 6 (2d. Cir. 1996)................................................................8

*W.E. Bassett Co. v. Revlon, Inc.,*
 435 F.2d 656 (2d Cir. 1970)..........................................................17

*Wesley-Jessen Div. of Scherina Corp. v. Bausch & Lomb Inc.,*
 698 F.2d 862 (7th Cir. 1983).........................................................19

*Yarmuth-Dion, Inc. v. D'ion Furs, Inc.,*
 835 F.2d 990 (2d Cir. 1987)............................................................9

STATUTES

15 U.S.C. § 1125 (43(a)) .................................................................9, 12, 19

TREATISES
2 J. McCarthy, McCarthy on Trademarks & Unfair Competition (3/2002).........…...............10

## INTRODUCTION

Plaintiff Nevada Apparel Corp. (hereinafter "Plaintiff" or "Nevada Apparel") owner of the inherently distinctive trademark TOPSHOP for clothing in the United States, seeks a temporary restraining order and a preliminary injunction preventing Defendant Arcadia Group Brands Limited (hereinafter "Defendant" or "Arcadia"), a company based in the United Kingdom, from commercializing the mark TOP SHOP for retail store services featuring clothing in the U.S.

Plaintiff is a local and growing clothing manufacturer, based in Manhattan, which has spent a substantial amount of time and resources over the past five years developing the trademark TOPSHOP as a recognizable brand name for women's clothing. After many years of hard work, plaintiff has finally secured sizable orders from prominent department stores such as Macy's and Nordstrom's to sell its TOPSHOP line of clothing and to promote the brand through their respective and widely distributed product catalogs.

Just when Plaintiff is poised to exponentially grow its brand TOPSHOP, Women's Wear Daily and The New York Times are reporting that Defendant is planning to soon open a huge new flagship store in Manhattan, and to imminently start selling its clothing to American consumers over the Internet, all under the same name TOP SHOP. According to the article in The New York Times, Defendant may even have already started using the mark TOP SHOP through a small third party boutique located in downtown Manhattan.

The publicity garnered by Defendant has already caused substantial, and possibly irreparable, harm to Plaintiff. Macy's and Nordstrom's are now demanding that Plaintiff produce proof of insurance coverage against trademark infringement claims in order for them to accept shipments of Plaintiff's goods. Macy's has even asked Plaintiff to supply a lawyer's letter to demonstrate that it owns the right to use its very own brand TOPSHOP. Plaintiff is being asked to

{00773963.1}

insure its right to use its own trademark.  These actions severely undermine Plaintiff's credibility and divert already limited resources from its small business.

Any continued publicity by Defendant, and any sales of clothing to American consumers under the mark TOP SHOP, threaten to make Plaintiff's significant investment in the same trademark TOPSHOP for women's clothing near worthless.  In a classic case of reverse confusion, American consumers will mistakenly believe that Plaintiff, the senior user of the trademark TOPSHOP in the U.S., is a mere copycat.  Moreover, retail store customers such as Macy's and Nordstrom's will be reluctant, or even unwilling, to carry any other brands offered by Plaintiff in the future if it is thought to be an illegal trademark infringer.

Plaintiff is already even losing customer orders due to the willfully infringing activities of Defendant.  Urgent relief through a temporary restraining order and preliminary injunction is necessary in order to protect Plaintiffs' investment in its valuable trademark TOPSHOP for clothing in the U.S., to prevent reverse consumer confusion with Defendant's junior use of the mark TOP SHOP for clothing retail store services, and to preserve the *status quo* prior to trial.

## STATEMENT OF FACTS

### Plaintiff's Commercial Activities

Plaintiff is an emerging manufacturer and seller of clothing for women.  Declaration of Shlomi Asher in Support of Nevada Apparel Corporation's Motion for a Preliminary Injunction (hereinafter the "Shlomi Dec.") at ¶ 4.  Brand names are extremely important to Plaintiff and its business.  Plaintiff sells its clothing under various trademarked brands such as SHINE NEW YORK and KLIK.  *Id*. at ¶ 5.

2

In 2001, Plaintiff launched a new line of women's clothing in the United States under the trademark TOPSHOP.  Shlomi Dec. at ¶ 6.  Since then, Plaintiff has continuously developed and expanded its use of the trademark TOPSHOP for its women's clothing as sold and distributed in the U.S.  *Id.* at ¶ 7.

Over the past five years, Plaintiff has sold over $2 million in women's clothing under the mark TOPSHOP.  Shlomi Dec. at ¶ 10.  Sales have grown substantially each year.  *Id.*  In 2007, Plaintiff anticipates that it will generate sales of clothing under the mark TOPSHOP of over $2.5 million.  *Id.* at ¶ 10.

Over the past five years, Plaintiff has expended a significant amount of time and resources in promoting TOPSHOP as a mark for women's clothing.  Among other things, Plaintiff operates showrooms in New York and Los Angeles.  Shlomi Dec. at ¶ 12.  It also maintains an Internet web site at www.topshopus.com.  *Id.* at ¶ 13.  Plaintiff also attends industry trade shows, where it promotes and solicits orders for its TOPSHOP brand of women's clothing.  *Id.* at ¶ 14.

Plaintiff has sought and received media attention to promote its TOPSHOP line of women's clothing.  Asher Dec. at ¶ 15.  Next month, Women's Wear Daily intends to publish an article featuring Plaintiff and its TOPSHOP brand in an section titled "Where Americans shop."  *Id.* at ¶ 16.  Plaintiff is also about to run advertisements in widely circulated publications such as The New York Times to promote its TOPSHOP branded clothing.  *Id.* at ¶ 17.

## Plaintiff's Entry into the Large Department Store Market

Plaintiff sells its women's clothing under the trademark TOPSHOP through many retailers in the U.S. including Kate Lane and Excursions among others.  Asher Dec. at ¶ 9.  Indeed,

3

after many solicitations by Plaintiff over the past few years, Plaintiff was rewarded with significant orders from Macy's and Nordstrom's to purchase its TOPSHOP brand of clothing. *Id.* at ¶¶ 19 and 21. Macy's and Nordstrom's even intend to promote Plaintiff's TOPSHOP line of clothing in their respective retail catalogs. *Id.* at ¶¶ 20 and 22.

## Plaintiff's Trademark Application and the Opposition

On December 2, 2002, Plaintiff filed U.S. Application Number 78/190,311 in the United States Patent and Trademark Office to register the mark TOPSHOP for identifying "women's clothing, namely skirts dresses, pants, tops and jacket." Declaration of Chung Yu in Support of Nevada Apparel Corporation's Motion for a Preliminary Injunction (hereinafter the "Yu Dec.") at ¶ A. The application was approved by an Examiner in the U.S. Patent and Trademark Office and published for opposition. *Id.* at ¶ 5.

Defendant subsequently filed an application to register its mark TOP SHOP for retail store services and online retail store services featuring clothing alleging an <u>intent</u> to use the trademark in the United States, a use here not yet begun. Declaration of Art C. Cody (hereinafter the "Cody Dec.") at Ex. B. Defendant timely filed a Notice of Opposition against Plaintiff's earlier application alleging priority of use, based upon its prior foreign use of the mark TOP SHOP for a chain of retail stores outside the United States and also for clothing and accessories bearing the mark TOP SHOP, and a likelihood of confusion (hereinafter the "Trademark Opposition Proceeding"). Yu Dec. at ¶ 8. Plaintiff responded to the Trademark Opposition Proceeding by filing a Motion to Dismiss on the ground that Defendant failed to allege any cognizable trademark rights in the U.S. or under U.S. law preceding those rights owned by Plaintiff. *Id.* at ¶ 9.

4

Defendant responded to the Motion to Dismiss by moving for leave to amend its Notice of Opposition to clarify its standing by alleging that its mark TOP SHOP is "well-known" in the U.S. and entitled to protection under Article 6 bis of the Paris Convention. Yu Dec. at ¶ 10. Plaintiff filed a reply in the Trademark Opposition Proceeding arguing, *inter alia,* that ownership of a well-known mark under Article 6 bis of the Paris Convention is not a valid ground for opposition and that Defendant did not plead that its mark was well-known as of the date when Plaintiff filed the Application. *Id.* at ¶ 11. The Motion to Dismiss has now been fully briefed and awaiting a decision from the Trademark Trial and Appeal Board. *Id.* at ¶ 12.

**Defendant's Activities**

Defendant is a foreign retailer with clothing stores named TOP SHOP located in the United Kingdom and other countries. Asher Dec. at ¶ 25. However, Defendant has no commercial presence under the name TOP SHOP in the United States. *Id.* at ¶ 28.

Defendant has recently announced that it is imminently preparing to expand into the U.S. with its TOP SHOP retail clothing stores. Asher Dec. at ¶ 29. The front-page article in the May 3, 2006 edition of Women's Wear Daily proclaimed "The British Invasion: Topshop Aims to Open Flagship in New York." *Id.* at ¶ 30; Ex. D. According to the article, Defendant plans to open a retail store selling women's clothing under the name TOP SHOP in Manhattan in the Spring of 2007. *Id.* at ¶ 31.

Defendant not only intends to enter the U.S. market under the name TOP SHOP, but it intends to do so in a significantly disruptive way. In the Women's Wear Daily article, Philip Green, a principal of Defendant, boasts that "[i]f we enter [the United States], we're not going to be

{00773963.1}

low key." *Id*. at ¶ 32.

Defendant further plans to utilize the Internet to advertise and sell clothing within the United States beginning as early as this month.  Defendant maintains linked Internet web sites at www.topshop.com and www.topshop.co.uk.  Yu Dec. at ¶ 15.  As of now, Defendant does not sell its goods into the Unites States and its web sites limit sates to the United Kingdom.  *Id*. at ¶ 16.  However, according to the article in Women's Wear Daily, Defendant is planning to put its entire store online on an international basis in June.  Asher Dec. at ¶ 33.

Defendant's ambitions were rapidly brought into focus by an article which just appeared in The New York Times on June 21, 2006.  The New York Times published an article titled "But Will It Play in Manhattan? A Fashion Hub in London, Topshop Looks to New York" about the imminent arrival of Arcadia into the U.S. market under its "Topshop" brand.  Supplemental Declaration of Shlomi Asher in Support of Nevada Apparel Corporation's Motion for a Preliminary Injunction and Temporary Restraining Order (hereinafter the "Asher Supp. Dec.") at ¶ 5; Ex. A.

The article from The New York Times confirms that Arcadia has real and immediate plans to invade New York and the U.S. market under the brand "Topshop" for retail clothing store services and that the New York store planned by Arcadia will be immense.  The article in The New York Times states that Philip Green, a principal of Arcadia, told reporters in April that the proposed New York store would be 60,000 to 90,000 square feet, a fashion outpost on a scale unmatched in any American city by any specialty clothing store.  Asher Supp. Dec. at ¶ 7.

The article in The New York Times also states that Arcadia plans to expand its web site in September by offering all the styles of clothing available in its London stores to acquaint

6

{00773963.1}

American consumers with its goods. Asher Supp. Dec. at ¶ 8. The article even suggests that Arcadia has already entered the New York market by introducing a shop within a shop in partnership with Opening Ceremony, a boutique in downtown Manhattan. *Id.* at ¶ 9.

The harm to Nevada Apparel and its brand TOPSHOP from Arcadia cannot be minimized. According to the article in the New York Times, Howard Davidowitz, a retail consultant, states that Arcadia's entering the New York market with its Topshop store "will be a very big deal" and that such a Topshop store "would really be a powerhouse that would impact every fashion retailer in New York." Asher Supp. Dec. at ¶ 10. No one would be impacted more that Nevada Apparel and its brand TOPSHOP for clothing.

**The Harm Caused to Plaintiff by Defendant's Activities**

Defendant's announced plans to enter the U.S. retail store market under the mark TOP SHOP have already interfered with Plaintiff's business dealings with its customers. Asher Dec. at ¶ 34. Ever since the article appeared in The New York Times, Plaintiff has been fielding calls from concerned customers. Supplemental Declaration of Chung Yu in Support of Nevada Apparel Corporation's Motion for a Preliminary Injunction and Temporary Restraining Order (hereinafter "Yu Supp. Dec.") at ¶ 3. Plaintiff has even lost orders from customers including Dillard's and Marshall Field's. *Id.* at ¶ 5.

Macy's and Nordstrom's, which have invested a substantial amount of time and resources in promoting Plaintiff's brand TOPSHOP through their respective catalogs and advertising, have required Plaintiff to obtain insurance against those department stores by the Defendant relating to sales of its TOP SHOP product. *Id.* at ¶ 35. Such insurance costs are a direct out-of-pocket

{00773963.1}

expense to Plaintiff. *Id.* Furthermore, the cloud on Plaintiff's right to the trademark TOPSHOP for clothing caused by Arcadia has and will make it difficult for Plaintiff to obtain any additional insurance necessary to sell its goods in the retail stores of others. *Id.* at ¶ 36.

Macy's has also requested that Plaintiff issue an attorney's letter verifying that it has the right to use the mark TOPSHOP for clothing in the U.S. Asher Supp. Dec. at ¶ 12.   Other buyers are now demanding similar assurances after reading the article which appeared in The New York Times. Yu Supp. Dec. at ¶ 6.   Such requests evidence a loss of faith in Plaintiff and its brand name TOPSHOP.

It took Plaintiff years of lobbying and effort to have Macy's and Nordstrom's even order its TOPSHOP brand of clothing. Asher Dec. at ¶ 36.   It may take Plaintiff years to convince Macy's and Nordstrom's and other customers to order from Plaintiff under a different product name, if they ever again might deal with Plaintiff. *Id.*

## ARGUMENT

In the Second Circuit, to prevail on a motion for preliminary injunction the party requesting relief must demonstrate: (1) that it is subject to irreparable harm; and (2) either (a) that it will likely succeed on the merits, or (b) there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tips decidedly in the favor of the moving party. *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d. Cir. 1997), *citing, Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 6, 8 (2d. Cir. 1996).   Each of these factors is undeniably present here.

8

## I.  PLAINTIFF WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION.

Irreparable harm is presumed upon a showing of likelihood of success on the merits in a trademark infringement action. *See generally Genesee, supra,* 124 F.3d at 142, *citing, Hasbro Inc. v. Lanard Toys Ltd.,* 858 F.2d 70, 73 *(2d. Cir. 1988); Clinique Laboratories, Inc. v. DEP Corp.,* 945 F. Supp. 547, 550 (S.D.N.Y. 1996).   In trademark cases, a strong showing of likelihood of confusion establishes the requisite likelihood of success on the merits as well as risk of irreparable harm. *Home Box Office, Inc. v. Showtime/The Movie Channel, Inc.,* 832 F.2d 1311, 1314 (2d Cir. 1987).   This presumption is based on the recognition that "[b]y its very nature, trademark infringement results in irreparable harm because the attendant loss of profits, goodwill, and reputation cannot be satisfactorily quantified and, thus, the trademark owner cannot be adequately compensated." *Societe Des Produits Nestle S.A. v. Casa Helvetia, Inc.,* 982 F.2d 633 at 640 (1st Cir. 1992).

## II.   PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS.

In order to prevail on the merits of a trademark infringement claim, a plaintiff must show that it is the owner of a valid trademark and that the Defendant's unauthorized use is likely to create a likelihood of confusion. *Clinique, supra,* 945 F. Supp. at 550, *citing, Gruhner and Jahr U.S.A. Pub. v. Meredith Corp.,* 991 F.2d 1072 (2d. Cir. 1993).  Plaintiff easily meets this burden.

### A.   Plaintiff Owns the trademark TOPSHOP for Clothing.

#### 1.   Under Common Law, The Prior User of the Mark is the Owner.

Section 43(a) of the Lanham Act provides a vehicle for preventing infringement of unregistered trademarks. *Yarmuth-Dion, Inc. v. D'ion Furs, Inc.,* 835 F.2d 990, 992 (2d Cir. 1987). The same rules regarding the protectability of registered word trademarks apply to the protectability of unregistered word marks under §43(a) of the U.S. Trademark Act. *See Thompson Medical Co., Inc.*

*v. Pfizer, Inc.*, 753 F.2d 208, 215-16 (2d Cir. 1985).

Plaintiff owns common law unregistered rights to the trademark TOPSHOP for clothing based upon its use of the mark in the ordinary course of trade. "[O]wnership of trademark or trade dress rights in the United States is obtained by actual use of a symbol to identify the goods or services of one seller and distinguish them from those offered by others. The way to obtain rights in a business symbol is to actually use it as a mark." 2 J. McCarthy, McCarthy on Trademarks & Unfair Competition § 16:1 (3/2002). "Use" means "the bona fide use of a mark in the ordinary course of trade." *Id.* at § 16:8, *quoting* 15 U.S.C. § 1127.

The Asher Dec. demonstrates that Plaintiff has been using the trademark TOPSHOP for clothing in the U.S. since 2001. Asher Dec. at ¶ 6. Since then, Plaintiff has continuously and systematically sold clothing under the trademark TOPSHOP in the U.S. *Id.* at ¶ 7. Such continuous and deliberate use of the trademark TOPSHOP through the sale of clothing in the U.S. over the past five years is more than sufficient to confer Plaintiff with protectable common law rights. *See La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1271-72 (2d Cir. 1974) (stating that to prove bona fide usage it is necessary for the proponent of the trademark to demonstrate that its use of the mark has been deliberate and continuous).

2.   **Priority of Trademark Rights in the United States Depends upon Priority of Use in the United States**

Plaintiff's protectable common law rights in the trademark TOPSHOP for clothing in the U.S. precede any rights to the mark TOP SHOP owned by Defendant in this country. It is hornbook law that ownership is governed by priority of use for inherently distinctive marks. *Trade-Mark Cases*, 100 U.S. 82, 25 L.Ed. 500 (1879*); Hanover Star Milling Co. v. Metcalf,* 240 U.S. 204, 60 L.Ed. 713, 36 S.Ct. 357 (1916*); United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 63 L.Ed.

141, 39 S.Ct. 48 (1918).   As discussed *infra,* the mark TOP SHOP is inherently distinctive for clothing.

Defendant has never used the mark TOP SHOP for the sale of clothing in the U.S. According to Philip Green, the owner of the Defendant, "[i]f we enter here, we're not going to be low key." Asher Dec. at ¶ 32, Ex C.  Stating "if we enter here" makes it abundantly clear that Defendant is not yet doing business here in the U.S. under the mark TOP SHOP.  Defendant should not be heard to argue to the contrary.

The article attached as Exhibit A to the Asher Supp. Dec. states that Defendant operates about 290 "Topshop" stores across Europe.  However, it is well-established that the use of a trademark outside the U.S. does not confer trademark rights in the U.S.  *See Buti v. Impressa Perosa S.R.L.,* 139 F.3d 98, 103 (2d Cir. 1985) (recognizing that the provision of restaurant services in Italy affords no protection to a trademark in the U.S.)(Cote, J.).  Thus, any use of the mark TOP SHOP by Defendant in the sale of clothing outside the U.S. is irrelevant for purposes of determining priority in this federal trademark infringement action.

Indeed, the concept of territoriality, that is, that trademark rights "exist in each country solely according to that country's statutory scheme," is basic to federal trademark law.  *Person's Co. Ltd. v. Christman, 900 F.2d 1565, 1568-69 (Fed. Cir. 1990)* (finding that the senior user of mark for clothing in the United States had superior rights despite the fact that he had prior knowledge of the junior user's identical mark for clothing in Japan).  As between Plaintiff and Defendant, it is Plaintiff that plainly owns superior rights to the trademark TOPSHOP for clothing in the United States based upon its earlier common law use of the mark here.

In the Trademark Opposition Proceeding, Defendant argued that its mark TOP SHOP is "well-known" in the United States.  Yu Dec. at. Ex. D.  However, the average American consumer

of women's clothing in the U.S. has never even heard of Defendant and its European mark TOP

SHOP. Asher Dec. at ¶ 27. Assuming *arguendo* that Defendant's mark TOP SHOP is "famous"

within the U.S., at least one Court in this District has declined to hold that an entity that has not used

a mark on products sold in the U.S. can acquire a U.S. trademark through operation of the famous

marks doctrine. *Almacenes Exito S.A. v. El Gallo Meat Market, Inc.,* 381 F.Supp.2d 324 (S.D.N.Y.

2005).

## B.  Defendant's Conduct Is Likely To Cause Consumer Confusion

Having established ownership to and priority in the trademark TOPSHOP for clothing

in the U.S., Plaintiff is entitled to prevent a likelihood of confusion with its protectable mark.  Section

43(a) of the Lanham Act, 15 U.S.C.§ 1125(a)(1), provides:

> [a]ny person who on or in connection with any goods or services
> …uses in commerce any word, term, name, symbol or device, or
> any combination thereof, or any false designation of origin, false
> or misleading description of fact, or misleading representation of
> fact, which …is likely to cause confusion, or to cause mistake, or
> to deceive…shall be liable in a civil action by any person who
> believes that he or she is or is likely to be damaged by such act.

Defendant has already admitted, in fact argued, that a likelihood of confusion exists

from the concurrent use of the parties' respective marks.  In its Notice of Opposition in the Trademark

Opposition Proceeding, Defendant alleged as follows:

> Applicant's [Defendant's] goods to be distributed under the
> TOPSHOP mark would be so closely related to the goods
> provided by Opposer [Plaintiff] under its TOP SHOP family of
> Marks as to be likely to cause confusion, mistake, or deception in
> the minds of the purchasing public as to the source or origin of
> Applicant's goods, in view of Opposer's long prior use of its
> TOPSHOP Family of Marks and well developed secondary
> meaning therein.
>
> Opposer will be damaged by the confusion which will result in
> the marketplace if the Applicant is permitted to register the mark
> TOPSHOP for the specified goods and therefore, Opposer is

likely to suffer damage and/or injury to its reputation and
goodwill as a result thereof.

Yu Dec. at Ex. B. For purposes of this motion, Plaintiff does not dispute the conclusive admission

made by Defendant that a strong likelihood of confusion exists between Plaintiff's trademark

TOPSHOP for women's clothing and Defendant's intended use of the mark TOP SHOP for the retail

sale of women's clothing. An adversary may rely upon contentions in a party's pleadings in another

case, so long as they are not altered or withdraw by amendment. *Pullman Co. v. Bullard,* 44 F.2d 347,

348 (5th Cir. 1930). As Defendant has not made any alteration of amendment to the claim in its Notice

of Opposition, Defendant is estopped from denying that the concurrent use of the parties' respective

marks in the U.S. is likely to cause consumer confusion.

Under such circumstances, it should be unnecessary for Plaintiff to review the familiar

Polaroid factors as set forth in *Polaroid Corp. v. Polarad Electonics Corp.,* 287 F.2d 492 (2d Cir.

1961*), cert. denied,* 368 U.S. 820 (1961). Nevertheless, an examination of the *Polaroid* factors clearly

demonstrates the confusion likely to result if Defendant is permitted to use the mark TOP SHOP in

the U.S. In the *Polaroid* case, the Second Circuit set forth the following now well-established factors

in connection with claims of trademark infringement for determining likelihood of confusion: (i) the

strength of the senior user's mark; (ii) the similarity between the two marks; (iii) the proximity of the

products; (iv) the likelihood that the senior user will bridge the gap; (v) the existence of actual

confusion; (vi) the junior user's intent; (vii) the quality of the junior user's products; and (viii) the

sophistication of the buyers. *Id.* at 495.

      (i)     Plaintiff's Mark TOPSHOP is Inherently Distinctive
             and Strong

To determine "distinctiveness" for purposes of establishing protectability of

unregistered trademarks, the trademarks are classified as (1) generic; (2) descriptive; (3) suggestive;

and (4) arbitrary or fanciful. *McGregor-Doniaer Inc. v. Drizzle Inc.,* 599 F.2d 1126, 1131 (2d Cir. 1979); *Paddington Corp. v. Attiki Importers & Distributors, Inc.,* 996 F.2d 577, 583 (2d Cir. 1993). A generic term "refers . . . to the genus of which the particular product is a species" and is not protectable. *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir. 1976). A descriptive mark "forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods." *Stix Products, Inc. v. United Merchants & Mfrs. Inc.,* 295 F. Supp. 479, 488 (S.D.N.Y. 1968) (citations omitted). "Descriptive marks, like generic ones, are considered inherently weak and may be protected or registered only upon a showing of 'secondary meaning.'" *Edison Bros. Stores v. Cosmair,* 651 F. Supp. 1547, 1554 (S.D.N.Y. 1987), *citing, McGregor-Doniger, supra,* 599 F.2d at 1131. *See* 15 U.S.C. § 1052(f) (descriptive marks are protectable if they "become distinctive of the applicant's goods in commerce"). Suggestive terms require "imagination, thought and perception to reach a conclusion as to the nature of goods." *Abercrombie & Fitch, supra,* 537 F.2d at 11. "An arbitrary or fanciful mark is a term having no association with the particular product or service." *Edison Bros., supra,* 651 F. Supp. at 1554. The latter two varieties of marks may be registered without reliance on secondary meaning. *Id.*

   In the instant case, Plaintiff's mark TOPSHOP is arbitrary and inherently distinctive without a need for a showing of secondary meaning. The mark TOPSHOP clearly does not convey a direct and immediate idea as to any qualities or characteristics of Plaintiff's clothing and therefore is not descriptive. If any connotations regarding Plaintiff's goods can be gleaned from the mark TOPSHOP, it requires a great amount of thought, imagination and perception to reach any conclusions as to the nature of its goods. *See Cullman Ventures, Inc. v. Columbian ArtWork, Inc.,* 717 F. Supp. 96, 199 (S.D.N.Y. 1989). Accordingly, Plaintiff's mark TOPSHOP for clothing is protectable without a showing of secondary meaning.

The distinctiveness of a trademark determines both the ease with which it may be established as a valid trademark and the degree of protection it will be afforded. *McGregor-Doninger, supra,* 599 F.2d at 1131.  As an inherently distinctive mark, Plaintiff's mark TOPSHOP for clothing should be afforded a wide scope of protection. *Nautilus Group Inc. v. ICON Health and Fitness Inc.,* 372 F.3d 1330, 1340 (Fed. Cir. 2004).  This factor militates in favor of Plaintiff.

(ii)      The Marks Are Identical

The mark TOP SHOP used by Defendant abroad is virtually identical to the mark TOPSHOP previously used by Plaintiff in the U.S.  The missing space between the words "TOP" and "SHOP" in Defendant's mark is inconsequential in evaluating the similarity between the marks. *See Cooper Indus. v. Repcoparts USA,* 218 U.S.P.Q. 81, 84 (T.T.A.B. 1983) (finding the marks METALMASTER and METAL MASTER to be essentially identical).

Indeed, the article in The New York Times announcing Defendant's plans to commercialize its mark in the U.S. spelled that mark as "Topshop."  Asher Supp. Dec. at Ex. A. Consumers in the U.S. would also likely misspell Defendant's foreign mark as a unitary mark.

There can be no dispute that the two marks sound the same.  Any space between the words "TOP" and "SHOP" would not be pronounced by consumers.

For all intents and purposes, the marks are identical for purposes of evaluating the likelihood of confusion between them.  As a result, this factor weighs heavily in favor of Plaintiff.

(iii)     The Product Proximity And<br>Channels Of Trade Are The Same

The parties' goods and services are the same or at least closely related.  It is well established that the retail sale of goods is closely related to the goods themselves such that a likelihood of confusion would arise from the use of the same mark for both activities. *See In re Hyper Shoppes,* 837 F.2d 463 (Fed. Cir. 1988) (finding that nearly identical marks for furniture and "general

merchandise store services" confusingly similar because "'general merchandise store services' would include the sale of furniture . . . there is overlap.").

Furthermore, Defendant intends to bridge the gap and sell clothing under the mark TOP SHOP in the U.S. It has filed an intent-to-use application to register the mark TOP SHOP for clothing for women and girls with the U.S. Patent and Trademark Office. Cody Dec. at Ex. A. These are the same goods that Plaintiff sells under its prior mark TOPSHOP.

Indeed, Plaintiff should not be foreclosed from eventually providing retail store services under its mark TOPSHOP in the U.S. Plaintiff already sells its clothing to consumers over the Internet through its web site at www.topshopus.com. Asher Dec. at Ex. B. It is well-established that the trademark laws protect "the senior user's interest in being able to enter a related field at some future time" and, by doing so, to expand the use of its trademark to [services] that are already being [offered] by a defendant. *Scarves by Vera, Inc. v. Todo Imports, Ltd.*, 544 F.2d 1167, 1172 (2d Cir. 1976). In this case, Defendant intends to bridge the gap and Plaintiff may do so in the future. Thus, this factor also strongly favors Plaintiff.

(iv)    Actual Confusion

Evidence of actual consumer confusion is difficult to uncover and is not a prerequisite to a finding of likely confusion. *See, e.g., Girls Clubs of Am., Inc. v. Boys Clubs of Am., Inc.*, 683 F. Supp. 50, 54 (S.D.N.Y.), aff'd, 859 F.2d 148 (2d Cir. 1988). Here, Defendant has not used its mark in the U.S. To the extent that Defendant is using its mark in a third party boutique in lower Manhattan, its product has only been available for a short period of time and under limited circumstances so there has not been much opportunity for evidence of actual confusion to surface. Also, the clothing sold by the respective parties is relatively low-priced so individual consumers are unlikely to complain even were the purchase mistake to come to the buyer's attention. *Olay Co., Inc.*, 218 U.S.P.Q. at 1040; *RJR*

*Foods, Inc. v. White Rock Corp.*, 201 U.S.P.Q. 578, 582 (S.D.N.Y. 1978), aff'd, 603 F.2d 1058 (2d Cir. 1979), *quoting, Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366, 383 (7th Cir.), cert. denied, 429 U.S. 830 (1976).

      Yet ever since the article about Defendant and its plans to commercialize the mark appeared in The New York Times, retail customers have been confused into mistakenly thinking that Plaintiff is planning to open a retail store in New York. Yu Supp. Dec. at ¶ 7. Where such evidence of actual confusion does exist, it is deemed to be strong evidence of likelihood of confusion. *Lambda Electronics v. Lambda Tech. Inc.*, 515 F.Supp. 915, 926 (S.D.N.Y. 1981).

(v)    <u>Defendants Have Acted With Bad Intent</u>

      The intent or motive of the alleged infringer is relevant to the issue of likelihood of confusion and to the terms of an injunction and damages. *W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 664 (2d Cir. 1970). The Defendant here was well aware of Plaintiff's prior use of the mark TOPSHOP for clothing in the U.S. before it began publicizing is planned entry into the U.S. market. The Trademark Opposition Proceeding was filed by Defendant on October 31, 2005. Yu Dec. at Ex. B. The articles publicizing Defendant and its planned use the mark TOP SHOP in the U.S. subsequently appeared in May of 2006. Asher Dec. at Ex. A and Asher Supp. Dec. at Ex. A.

      The courts have little sympathy or tolerance for a junior user who knowingly adopts a mark similar to that of an established competitor. *A.T. Cross Co. v. Jonathan Bradley Pens, Inc.*, 470 F.2d 689, 692 (2d Cir. 1972). Indeed, in assessing the likelihood of confusion in such cases, all doubts should be resolved against the newcomer. *See American Home Prods. Corp. v. Johnson Chem. Co., Inc.*, 589 F.2d 103, 107 (2d Cir. 1979).

(vi)    <u>The Sophistication of Buyers is Low</u>

      The clothing sold by the parties under their respective marks is relatively

inexpensive.  For example, the dress featured on the home page of Plaintiff's internet web site at www.topshopus.com sells for only $52.  Asher Dec. at Ex. B.  Similarly, the blouses shown on Defendant's internet web site at www.topshop.co.uk are advertised for only £16.  Yu Dec. at Ex. F.  At today's exchange rates, £16 amounts to less than $30.  This factor weighs in favor of a finding of likelihood of confusion.  *McGregor-Doninger, supra,* 599 F.2d at 1137.

The sophistication of buyers relates to the degree of care likely to be exercised by potential customers in selecting the parties' respective products.  In general, the less expensive a product, the less care a purchaser is likely to exercise in selecting the product and, thus, the more likely it is that an infringing product will be confused with, and selected instead of, the intended product.  *McGregor-Doniaer, supra,* 599 F.2d at 1137.

In addition, this factor centers on the average member of the consuming public which is drawn from persona of all ages and all levels of education and sophistication.  *See Coca-Cola Co. v. Gemini Rising, Inc.,* 346 F. Supp. 1183, 1190 (E.D.N.Y. 1972) ("the ordinary purchaser consists of a 'vast multitude which includes the ignorant, the unthinking and the credulous . . . ."), *quoting, Florence Mfa. Co. v. J.C. Dowd & Co.,* 178 F. 73, 75 (2d Cir. 1910)).  Moreover, the Second Circuit has held that where the marks and goods are identical, the sophistication of the buyers cannot be relied upon to prevent confusion.  *Banff, Ltd. v. Federated Dept. Stores, Inc.,* 841 F.2d 486, 492 (2d Cir. 1988).  Here, the fact that the marks are identical and the buyers are unsophisticated makes confusion between the marks not just likely but inevitable.

### (vii)    Quality of the Products

Plaintiff's clothing, even though relatively inexpensive, is still high in quality.  Stores such as Macy's and Nordstrom's, which carry Plaintiff's goods, are commonly known for selling high quality clothing.  Defendant's clothing is less expensive than Plaintiff's clothing.  As a result,

the quality may not be as high.  Thus, this factor weighs in favor of Plaintiff due to the "risk that the public perception of [its] product will suffer if it is associated with a product of inferior quality." *Proctor & Gamble Co. v. Johnson & Johnson, Inc.,* 485 F. Supp. 1185, 1202, aff'd., 636 F.2d 1203 (2d Cir. 1980).

      Even if Defendant's clothing is equivalent in quality to the clothing sold by Plaintiff, the similarity in the quality of the goods would underscore the identity of the parties' respective products and, therefore, increase the likelihood of confusion.  *Banff, Ltd. v. Federated Dept. Stores, Inc.* 638 F. Supp. 652, 657 (S.D.N.Y 1986), *aff'd.,* 841 F.2d 486, 492 (2d Cir. 1988).

      Indeed, the victim of infringement has the right to insist that its reputation not be imperiled by another's actions.  Thus, "a senior user may sue to protect his reputation even where the infringer's goods are of top quality."  *Mobil Oil Corp.,* 818 F.2d at 259-60, *quoting, Wesley-Jessen Div. of Scherina Corp. v. Bausch & Lomb Inc.,* 698 F.2d 862, 867 (7th Cir. 1983).

      Moreover, another type of actionable confusion is likely here.  The confusion likely to arise from the parties' concurrent use of their respective marks is not the usual kind of forward confusion where people are more familiar with the senior user's mark and mistakenly believe that the junior user is affiliated or connected with the senior user.  Rather, because Defendant is a large European company which, according to its own admission, will not be low-key if it enters the U.S. market, reverse confusion will likely result.  That is, people who become familiar with Defendant's foreign mark TOPSHOP through its massive public relations campaign will mistakenly believe that Plaintiff is affiliated or connected with the Defendant late comer.

      The Second Circuit has unequivocally held that reverse confusion is actionable under §43(a) of the Lanham Act for infringement of unregistered marks.  In *Banff, Ltd. v. Federated Department Stores, Inc.,* 841 F.2d 486 (2d Cir. 1988), the Second Circuit allowed a claim of reverse

confusion where the senior user, Banff, complained that consumers mistakenly believed that the better known junior user, Bloomingdale's, was the source of the senior user's goods. *Id.* at 490-91; *see also Sterling Drug, Inc. v. Bayer AG,* 14 F.3d 733, 741 (2d Cir. 1994)(finding that allowing reverse confusion claims comports with the dual purposes of the Lanham Act, protecting the public from source confusion and protecting the trademark owner from misappropriation of its mark).

Protecting senior users is a core concern in cases such as here where a junior user is a much larger company with substantially more resources to promote its mark. *Citizens Financial Group Inc. v. Citizens National Bank of Evans City*, 383 F.3d 110, 131 (3d Cir. 2004) ("without the recognition of reverse confusion, smaller senior users would have little protection against larger, more powerful companies who want to use identical or confusingly similar trademarks"), *quoting, Fisons Horticulture v. Vigoro Indust.,* 30 F.3d 466, 475 (3d Cir. 1994).

Plaintiff is a small local clothing manufacturer. It does not have the resources to counter the public relations campaign launched by Defendant. Only the Court can protect Defendant against the reverse confusion that is sure to result from Defendant's recent and widespread publicity in the U.S.

Allowing reverse confusion to continue unchecked will damage, if not destroy, the reputation that Plaintiff has developed, and continues to develop under its mark TOPSHOP for clothing. *See Ameritech, Inc. v. American Information Technologies Corp.,* 811 F.2d 960, 964 (6th Cir. 1987)(explaining that reverse confusion causes the senior user to lose, among other things, its product identity and control over its goodwill and reputation). There is little point in Plaintiff continuing to advertise and promote the trademark TOPSHOP as a brand for its clothing if

Defendant blitzes the market here and causes American consumers to associate the mark TOP SHOP with its clothing stores located in Europe.

The reverse confusion caused by Defendant here is particularly nefarious because Defendant continues to intend to use the mark TOP SHOP for retail clothing stores in the U.S. despite having actual knowledge of Plaintiff and its business. The Trademark Opposition Proceeding should have sent a strong message to Defendant that its activities in preparing to use the mark TOP SHOP in the U.S. are made at its own risk and that Plaintiff intends to protect its exclusive right to use the mark TOPSHOP for clothing in the U.S.

Nevertheless, Defendant has acted like a bull in a china shop by trampling Plaintiff's U.S. trademark rights and announcing to the world that it intends to invade the U.S. market with its foreign TOP SHOP brand. Accordingly, the Court should treat Defendant as a willful infringer when finding that a likelihood of reverse confusion exists between the marks. Unless immediately enjoined by this Court, Defendant, a massive European retailer, will continue to willfully infringe the trademark TOPSHOP of Plaintiff, a small American manufacturer, with "impunity." *See Banff, supra,* 841 F.2d at 491.

## III.  **THE BALANCE OF HARMS FAVORS NEVADA APPAREL**

### A.  **Arcadia's Intended Infringement Has Damaged and Will Continue to Damage Nevada Apparel and its Investment in the TOPSHOP Trademark Unless Enjoined**

In addition to the irreparable harm done to Plaintiff, presumed from Defendant's intended infringement, there is evidence of actual harm. Plaintiff is already losing customers as a result of the publicity received by Arcadia in The New York Times. Yu Supp. Dec. at ¶ 4. Dillard's and Marshall's have just cancelled their orders with Plaintiff. *Id.* at ¶ 5.

Furthermore, Plaintiff's new and valuable customers Macy's and Nordstrom's have already required that Plaintiff prove insurance coverage from any claims of infringement before accepting orders for TOPSHOP branded clothing. Asher Dec. at ¶ 35. Macy's has even requested that Plaintiff supply a letter from an attorney to confirm that Plaintiff has the right to use its own mark TOPSHOP for clothing. Asher Supp. Dec. at ¶ 12. Other customers are now requesting the same assurances as well. Yu Supp. Dec. at 6. Plaintiff, a small business, has had to divert its limited resources, resources that would be better spent advertising and promoting the brand TOPSHOP, to deal with these issues.

Moreover, the skepticism displayed by these new customers has already tarnished the reputation of Plaintiff. If the Court does not grant the requested relief, Macy's and Nordstrom, as well as others, may decline to continue to sell Plaintiff's TOPSHOP branded clothing, and any other clothing sold by Plaintiff, entirely.

The temporary restraining order and preliminary injunction are also necessary to prevent any additional consumer confusion. The articles in Women's Wear Daily and The New York Times demonstrate that Defendant is actively seeking to publicize its plans to do business under the mark TOP SHOP in the U.S. According to those articles, Defendant is also about to start selling clothing to consumers over the Internet under the name TOP SHOP. Once American consumers associate the mark TOP SHOP with Defendant, the brand will become damaged goods for Plaintiff, which will thought of as a mere infringer.

B.  **Granting the Preliminary Injunction will be Less Damaging to Arcadia Than Denying the Preliminary Injunction would be to Nevada Apparel**

The little and recent investment made by Defendant in contemplating opening a store in New York under the name TOP SHOP and in modifying its Internet web site to allow for sales to consumers in the U.S. pales in comparison to the substantial expense in time and resources incurred by Plaintiff in developing TOP SHOP as a brand for women's clothing in the U.S. over the past five years. As noted in *Frisch's Restaurants, Inc.* v. *Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 651 (6th Cir. 1982), the substantial financial expenses incurred by a trademark owner in promoting its trademark strongly support granting injunctive relief.

Plaintiff does not seek to prevent Defendant from opening any retail clothing stores in the U.S. or selling to American consumers over the Internet. Only from doing so under the name TOP SHOP or under any other name confusingly similar to Plaintiff's earlier mark TOPSHOP. Even assuming some loss on the part of Defendant, resulting from having to use a name in the U.S. which differs from its foreign stores, the "harm to the defendant as a result of an injunction is 'entitled to less consideration than other harms.'" *Montblanc-Simplo GMBH V. Staples Inc.*, 172 F. Supp. 231, 249 (D. Mass. 2001) (internal cites omitted).

Indeed, if Defendant continues to insist upon using the mark TOP SHOP in the U.S., as a willful infringer, it must bear the risk of any financial loss resulting from an injunction. The Court in *Syntex Laboratories, Inc. v. Norwich Pharmacal Co.* aptly stated that "[i]f defendant had not adopted and continued to use the name with full knowledge of its similarity to plaintiff's trademark . . . we might have been persuaded, but in choosing to continue in the teeth of this knowledge rather than adopt some other name defendant's predicament is of its own making." 315 F. Supp. 45, 47 (S.D.N.Y. 1970), *aff'd,* 437 F.2d 566 (2d Cir. 1971); *see also Banff, supra,*, 638 F.

Supp. at 658 (finding that despite financial harm to defendant, a preliminary injunction was proper due to the defendant's "knowing decision to adopt a mark that was similar to that of [plaintiff]....[plaintiff's] business decision to create and market a similar label does not now provide an equitable basis for opposing the grant of injunctive relief.")

In short, the balance of the equities in this case pits Plaintiff's long term investment in a product line that is at the cusp of fulfilling its promise, against the Defendant's bullying effort to develop a "global" brand without regard to local trademark rights.  The balance of hardships overwhelmingly favors Plaintiff.

## C. Granting the Preliminary Injunction is Necessary to Safeguard the Public from a Likelihood of Confusion

Finally, protection of the public from deception and confusion demands a preliminary injunction.  Having already established a likelihood of confusion, the public interest is presumed damaged from the concurrent use of the parties' respective marks.  *Opticians Ass'n. of America v. Independent Opticians of America*, 920 F.2d 187, 198 (3rd Cir. 1990); *Corning Glass Works v. Jeannette Glass Co.*, 308 F. Supp. 1321, 1328 (S.D.N.Y. 1970), *aff'd.*, 43 F.2d 784 (2d Cir. 1970).  Here, there is a special need to prevent the public from confusion by allowing unrelated parties to use identical marks.  "The public interest is served by preventing consumer confusion in the marketplace." *Davidoff & Cie, S.A. v. PLD Intern. Corp.*, 263 F.3d 1297, 1304  (11th Cir. 2001). "It is in the public's interest to protect consumers from confusion and protect the right of a trademark owner to control its own product's reputation." *Paccar, Inc. v. Telescan Technologies, L.L.C.*, 115 F. Supp. 2d 772, 780 (E. D. Mich. 2000).  Therefore, the balance of interests tips decidedly in favor of Nevada Apparel and the issuance of preliminary injunction.

{00773963.1}

24

## IV.    PLAINTIFF IS ENTITLED TO A TEMPORARY RESTRAINING ORDER

In the present Action, Plaintiff has requested, *inter alia*, that this Court grant a temporary restraining order pending the hearing on the preliminary injunction to maintain the status quo.  If Defendant is allowed to continue to actively publicize its planned launch of the brand TOP SHOP in the U.S. and to start to sell clothing to consumers in the U.S. over the Internet under the name TOP SHOP sometime this month, or to otherwise use the mark TOP SHOP in the U.S, irreparable harm and damage to Plaintiff will continue.

As the Second Circuit stated when it ordered the district court to issue a temporary restraining order in *In re Vuitton et Fils, S.A.*, 606 F.2d 1, 4 (2d Cir. 1979):

> "In a trademark infringement case such as this, a substantial likelihood of confusion constitutes, in and of itself, irreparable injury sufficient to satisfy the requirements of Rule 65(b)(1)." (Citations omitted).

In the absence of a temporary restraining order, Defendant can be expected to continue to commercialize the mark TOP SHOP in U.S. commerce in derogation of the prior right owned by Plaintiff.

## CONCLUSION

For the foregoing reasons, Nevada Apparel's motion for a temporary restraining order and preliminary injunction should be granted in all respects.

Dated: June 22, 2006              Respectfully submitted,
      New York, New York

Robert C. Faber (RF 7020)
Peter S. Sloane (PS 7204)
Art C. Cody (AC 5515)
OSTROLENK, FABER, GERB & SOFFEN, LLP
1180 Avenue of the Americas
New York, New York   10036
(212) 382-0700
Attorneys for Plaintiff Nevada Apparel Corp.

{00773963.1}                                    25