James Tampellini (JT 0529)
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, NY 10022-2585
Phone: 212-940-8800
Fax:    212-940-8776

Floyd A. Mandell (FM 9418)
Timothy J. Vezeau (upon admission)
William J. Dorsey (upon admission)
Julie P. Setren (upon admission)
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
Phone: 312-902-5200
Fax:    312-902-1061

*Attorneys for Defendant/Counter-Plaintiff
Arcadia Group Brands Limited*

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NEVADA APPAREL CORP.,<br><br>        Plaintiff/Counter-Defendant,<br><br>v.<br><br>ARCADIA GROUP BRANDS LIMITED,<br><br>        Defendant/Counter-Claimant. | Civil Action No.: 06 CV 3986 (DC)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF ARCADIA GROUP BRANDS LIMITED'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION TO PRESERVE THE STATUS QUO AND MODIFICATION OF PRIOR ORDER TO INCREASE BOND AMOUNT AND ALLOW DISCLAIMER**<br><br>ECF Case<br><br>This document has been Electronically filed |

INTRODUCTION

Defendant/Counter-Claimant Arcadia Group Brands Limited ("Arcadia"), by its attorneys, hereby moves this Court for the entry of a temporary restraining order and preliminary injunction enjoining and restraining Plaintiff/Counter-Defendant Nevada Apparel Corp. ("Nevada") from upsetting the "status quo" established by this Court's June 23, 2006 Temporary Restraining Order by engaging in an advertising and promotional campaign initiated by Nevada on Monday, July 10, 2006, to gain an unfair competitive advantage in the marketplace over Arcadia and to create confusion among U.S. customers pending the expedited trial in this matter.[1] Arcadia further moves this Court to modify the June 23, 2006 Temporary Restraining Order to increase the bond amount posted by Nevada as security for the Court's prior order, given the increased risk of harm to Arcadia.

BACKGROUND FACTS AND PROCEDURAL HISTORY

Since at least as early as 1968, Arcadia has used its TOPSHOP[2] business and trade name, service mark, and trademark for, on, and in connection with its business of promoting, advertising, and selling a broad range of apparel and accessories as well as retail store services. These services subsequently expanded to include online store services featuring apparel and accessories. Arcadia is the owner and operator of the internationally renowned TOPSHOP chain of retail stores where it sells a wide range of clothing and accessories bearing Arcadia's famous TOPSHOP names and marks. Sales of clothing and accessories in the United Kingdom and worldwide bearing Arcadia's TOPSHOP names and marks have totaled over a billion dollars in each of the past two years, and nine hundred seventy-five million dollars the previous year. U.S.

---

[1] Counsel for Nevada were asked if they would consent to this motion, and they declined.

[2] Arcadia has for many years used the TOPSHOP mark in the form "TOPSHOP" and in the form "TOP SHOP" in varied spaced proportions.

customers regularly visit TOPSHOP stores every day, and comprise an important part of Arcadia's customer base. (*See* Decl. of Jane Shepherdson, dated July 11, 2006 ("Shepherdson Decl.") submitted simultaneously herewith at ¶ 2.)

Arcadia's TOPSHOP mark has achieved such a level of fame that it has been mentioned in popular songs and in mass-produced publications, including The New York Times, Women's Wear Daily, and UK Vogue. Arcadia's TOPSHOP brand also has become a favorite of celebrities in the U.S. Specifically, as reported in the September 26, 2003 issue of the Evening Standard (London), "Gwyneth Paltrow... confesses that she has an obsession with Topshop" and that "Singer Dido... says she always buys armfuls of girly chiffon tops from Topshop." (*See* Shepherdson Decl. at ¶ 3.)

Arcadia advertises and promotes its products and services extensively through many forms of media, including, but not limited to, advertisements in internationally circulated publications and on the internet at its www.topshop.com web site. Arcadia has spent ten million dollars or more each year for the last four years on advertising, marketing, and promoting its TOPSHOP mark. The TOPSHOP brand is also regularly the focus of unsolicited media coverage on radio, television, in magazines, newspapers, and elsewhere worldwide, including in the United States. Arcadia's unsolicited media coverage has been valued at between approximately $25 and $30 million dollars a year for the last three years. Consumers worldwide are familiar with Arcadia's TOPSHOP brand and associate the TOPSHOP brand exclusively with Arcadia. (*See* Shepherdson Decl. at ¶ 4.)

Arcadia has expended considerable resources establishing and protecting its valuable TOPSHOP trademark worldwide, and owns international trademark registrations in, among others, the following countries: Algeria, Australia, Bahrain, Benelux, China, Croatia, Cyprus,

3

Czech Republic, Denmark, Estonia, European Union, Finland, France, Germany, Gibraltar, Greece, Guernsey, Hong Kong, Hungary, Iceland, Indonesia, Ireland, Israel, Italy, Japan, Jordan, Lebanon, Malta, Morocco, New Zealand, Peru, Philippines, Poland, Portugal, Russia, Singapore, Slovenia, South Africa, South Korea, Spain, Switzerland, Taiwan, Turkey, United Arab Emirates, United Kingdom and Yemen, all of which are valid and cover clothing, accessories, retail store services and related goods and services. (*See* Shepherdson Decl. at ¶ 5.)

On June 22, 2006, one month after filing suit against Arcadia, Nevada moved this Court for the entry of a temporary restraining order, claiming it was necessary to "maintain the status quo" and to prevent Nevada from suffering what it alleged to be irreparable harm pending the outcome of a trial on the merits. (Nevada's Memo. In Support of Motion for TRO and Preliminary Injunction at 25 ("... Plaintiff has requested ... that this Court grant a temporary restraining order pending the hearing on the preliminary injunction to maintain the status quo.").)

In the June 23, 2006 Order, the Court granted Nevada's emergency motion for temporary restraining order (over Arcadia's objections) and enjoined and restrained Arcadia from "[i]mporting, advertising, promoting, distributing, offering or selling any products or services under the mark TOPSHOP, or any confusingly similar mark, in U.S. commerce" pending a trial on the merits.

Arcadia has now filed its motion to dismiss two counts of Nevada's complaint, its answer to the remaining counts, and its five-count counterclaim for violation of 15 U.S.C. §1125(a), unfair competition, violation of New York Gen. Bus. L. § 360-L, violation of New York Gen. Bus. L. § 360, and declaratory judgment.

In defense of the claims asserted by Nevada and to prove its counterclaims, Arcadia will show at trial that Nevada owns no trademark registration for the mark TOPSHOP and that

Nevada has engaged in a minimal amount of sales and advertising activity under the mark TOPSHOP. Arcadia will further demonstrate that it had use and fame in the United States of TOPSHOP significantly prior to Nevada. Indeed, to date, Arcadia has been unable to confirm any of the sales figures set forth in support of Nevada's motion for temporary restraining order, and Arcadia has received virtually no supporting documentation for Nevada's purported sales.[3]

Arcadia will further show at trial that continued use by Nevada of the name TOPSHOP will cause confusion among the public familiar with Arcadia's TOPSHOP mark, resulting in damage to Arcadia and harm to the public.

Upon information and belief, prior to yesterday, Nevada had never engaged in any national advertising. (Declaration of Attorney Karen A. Ash, dated July 12, 2006 ("Ash Decl.") submitted simultaneaously herewith at ¶ 3.)

Notwithstanding the fact that this case is going to trial in a matter of weeks, and the fact that Nevada obtained a temporary restraining order from this Court on the purported grounds that it sought to "maintain the status quo," Nevada, for the first time ever, has taken out a full page advertisement under the name "TOPSHOP USA." A copy of this advertisement is attached to the Ash Declaration at Tab 1. (*See* Ash Decl. at Ex. 1.)

The advertisement – which proclaims, among other things, that "TOPSHOP USA is living up to its name" – appears in this Monday's online and print edition of Women's Wear Daily and appears to be merely the opening salvo of a planned advertising blitz. Indeed, as reflected in e-mail correspondence between counsel attached to Ms. Ash's declaration, Nevada has announced its intention to proceed with an advertising campaign "without respect to ... the litigation." (*See* Ash Decl. at ¶ 4, Ex. 2.)

---

[3]  Arcadia's initial investigation has also raised doubts about Nevada's claim – submitted in the affidavit of Nevada's principal in support of the injunction – that it has been required to obtain insurance for use of the TOPSHOP name by certain of its customers.

Women's Wear Daily is a 92-year old internet and print based publication with a readership of 150,000 that covers the women's fashion and retail industries. It is well known as the industry leader of fashion periodicals and is read by retailers, designers, and consumers. (Ash Decl. at ¶ 2.)

### ARGUMENT

The fashion industry and the American public associate "TOPSHOP" with Arcadia, and have associated TOPSHOP with Arcadia since long before Nevada ever commenced its alleged use. Nevada's decision to undertake a new and unprecedented advertising campaign before the trial of this case on the merits is intended to upset the "status quo" by establishing Nevada as the sole source of products sold under the disputed "TOPSHOP" name, thereby causing irreparable harm to Arcadia before this Court can decide the case. Continued advertising of this nature will also cause additional confusion to the public.

### I. ARCADIA IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION TO RESTORE THE STATUS QUO.

Nevada's decision to take out a national advertisement touting "TOPSHOP USA" – after the entry of this Court's June 23, 2006 Order to maintain the status quo and "without respect to … the litigation" – is a transparent attempt to use this litigation to gain an unfair competitive advantage in the marketplace and cash in on the goodwill established by Arcadia during a time in which Arcadia is enjoined from doing business or advertising in the U.S and, effectively, has its hands tied in the marketplace. (*See* Shepherdson Decl. at ¶ 6.) This is exactly the type of abuse temporary restraining orders are designed to prevent. *WarnerVision Entm't Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259, 261-62 (2d Cir. 1996). Indeed, the Second Circuit has held that ***a restraining order should not "permit[ ] one party to obtain an advantage by acting, while the hands of the adverse party are tied by the writ."*** *Id.* at 262 (internal citations omitted and

emphasis added). Nevada's election to publish its first national advertisement in Women's Wear Daily – the very same publication which had recently featured an article on Arcadia and which Nevada relied upon in support of its complaint and motion for temporary restraining order – further demonstrates Nevada's bad faith attempt to confuse U.S. customers and trade on the name established by Arcadia.

In order to obtain a temporary restraining order under Fed. R. Civ. P. 65, the movant must demonstrate: "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *AIM Int'l. Trading, LLC v. Valcucine SpA., LLC*, 188 F. Supp. 2d 384, 387 (S.D. N.Y. 2002) (citing *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)).

The purpose of a temporary restraining order is to preserve the status quo. *AIM Int'l Trading*, 188 F. Supp. 2d at 387 (citing *Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1125 (2d Cir. 1989) ("The purpose of a temporary restraining order is to preserve an existing situation in status quo until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction.") (emphasis in original)). The status quo should apply to both parties, as a temporary injunction should "keep the parties, while the suit goes on, as far as possible in the respective positions they occupied when the suit began." *WarnerVision*, 101 F.3d at 261-62 (internal citations omitted).

Accordingly, Arcadia respectfully requests that this Court enjoin and restrain Nevada from further advertising and promotions pending a trial on the merits. The irreparable harm to Arcadia if Nevada proceeds with its planned advertising and promotional blitz without respect to the litigation – at the same time Arcadia is enjoined and restrained from any advertising or

7

operations of its own – is incalculable. Moreover, as set forth above and in Arcadia's responsive pleadings, Arcadia has already raised serious questions about the bases for Nevada's claims and shown that Arcadia will likely succeed on the merits of its counterclaim at trial based on its prior use of the "TOPSHOP" mark and its worldwide fame.

## II. THE BOND POSTED BY NEVADA SHOULD BE RAISED TO $1 MILLION TO REFLECT THE INCREASED RISK OF HARM TO ARCADIA.

Arcadia requests that this Court increase the bond amount to be posted by Nevada as security for the June 23, 2006 Temporary Restraining Order to $1 million in light of Nevada's demonstrated disregard for the status quo, lack of respect for this litigation, and attempts to obtain an unfair competitive advantage while Arcadia's U.S. operation are effectively enjoined. The current $200,000 bond is insufficient to address the likely finding at trial that Nevada was not entitled to the injunction.

## III. THE COURT SHOULD MODIFY ITS JUNE 23, 2006 ORDER TO PERMIT ARCADIA TO ISSUE REPARATIVE DISCLAIMERS TO ADDRESS ANY CONFUSION CAUSED BY NEVADA'S ADVERTISEMENT.

Arcadia requests modification of the Court's June 23, 2006 Temporary Restraining Order, permitting Arcadia to place a reparative disclaimer in Women's Wear Daily and in other trade publications published in the United States to clarify to retailers, designers, and the consuming public that Nevada's use of the "TOPSHOP" mark is in no way endorsed by, related to, approved by, affiliated with, or sanctioned by Arcadia or its "TOPSHOP" mark and that the two companies are not affiliated or related in any way.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, Arcadia Group Brands Limited respectfully requests that the Court enter an Order, in the form attached to the Ash Decl. as Exhibit C :

(a) Enjoining and restraining Nevada Apparel Corp. from advertising or promoting any products or services under the names "TOPSHOP" or "TOPSHOP USA," or any confusingly similar mark, in U.S. commerce and ordering Nevada Apparel Corp. to halt any and all previously ordered advertisement or promotions pending a trial on the merits;

(b) Increasing to $1 million the bond to be posted by Nevada Apparel Corp. as security for the payment of such costs and damages as may be incurred or suffered by any party who is subsequently found to be wrongfully enjoined or restrained, such bond to be posted at or prior to July 18, 2006; and

(c) Modifying the Court's July 23, 2006 Temporary Restraining Order to confirm that Arcadia may place reparative disclaimers in Women's Wear Daily and other trade publications published in the United States to clarify to retailers, designers, and the consuming public that Nevada's use of the "TOPSHOP" mark is in no way endorsed by, related to, approved by, affiliated with, or sanctioned by Arcadia or its "TOPSHOP" mark and that the two companies are not affiliated or related in any way.

Dated: July 12, 2006

KATTEN MUCHIN ROSENMAN LLP

By: _____
James Tampellini (JT 0529)

Attorneys For Defendant/Counter-Plaintiff
*ARCADIA GROUP BRANDS LIMITED*

575 Madison Avenue
New York, NY 10022-2585
Phone: 212-940-8800
Fax:    212-940-8776

Floyd A. Mandell (FM 9418)
Timothy J. Vezeau (upon admission)

William J. Dorsey (upon admission)
Julie P. Setren (upon admission)
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
Phone: 312-902-5200
Fax:    312-902-1061